UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-00774-DKL-TWP |
| MICHAEL ASTRUE Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICAL REVIEW

Plaintiff Gary Fields ("Fields") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying Fields' application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. For the reasons set forth below, the Commissioner=s decision is **REVERSED** and **REMANDED**.

### I.   BACKGROUND

#### A. Procedural History

Fields filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on December 12, 2008, alleging an onset of disability of

---

[1] Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, while this case was pending. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for the former Commissioner Michael J. Astrue.

January 1, 2008. [Dkt. 15-2 at 58.] Fields' applications were denied initially on May 6, 2009, and upon reconsideration on October 5, 2009. [Id.] Fields requested a hearing, which was held via videoconference on September 13, 2010, before Administrative Law Judge David R. Wurm ("ALJ"). Fields appeared in Danville, Illinois with counsel; the ALJ presided from San Antonio, Texas. The ALJ denied Fields' application on October 27, 2010. [Dkt. 15-2 at 68.] The Appeals Council denied Fields' request for review of the ALJ's decision on April 11, 2012, making the ALJ's decision final for purposes of judicial review. [Dkt. 15-2 at 1-3.] Fields filed his Complaint with this Court on June 6, 2012. [Dkt. 1.]

### B. Factual Background and Medical History

Fields, who was forty-two at the time of the administrative hearing, alleges both mental and physical impairments. He has an eleventh grade education and does not have a GED. Prior to the alleged onset of disability, Fields held jobs as a short order cook and a welder.

1. *Mental Impairments*

Fields has been diagnosed with Major Depression, Generalized Anxiety Disorder and Psychotic Disorder. Fields testified that he has struggled with sleeplessness because he "hears voices" and "sees shadows" almost every night. He further testified that he began seeing a therapist at age seventeen and has been seeing a psychiatrist regularly for the past eighteen months.

On January 27, 2009, Fields was evaluated by Christine Watson, a Licensed Clinical Social Worker with Wabash Valley Hospital. Watson noted in the Case

summary that Fields showed symptoms of anxiety and depression and reported hearing voices that tell him he is a bad person and cannot do anything right. Watson recommended that Fields see Dr. Martin Abbert, a psychiatrist with Wabash Valley Hospital.

The medical records reflect Fields first saw Dr. Abbert on March 25, 2009, though Fields testified that he had seen Dr. Abbert at different times throughout his life beginning at age seventeen. Dr. Abbert's Psychiatric Summary, dated March 25, 2009, listed diagnoses of Major Depressive Disorder, Primary Insomnia, Generalized Anxiety and Borderline Intelligence. He prescribed Lexapro as an antidepressant, Ambien for the insomnia, Xanax for anxiety and Geodon for the auditory hallucinations. Fields continued to treat with Dr. Abbert for his mental impairments approximately quarterly through the date of the hearing. Each Progress Note in the medical record consistently identifies diagnoses of Major Depression with psychosis, Generalized Anxiety Disorder and Primary Sleep Disorder. A Progress Note dated November 12, 2009, indicated Fields continued to hear voices and Dr. Abbert switched his medication from Geodon to Seroquel. On June 8, 2010, Dr. Abbert noted that "he is hearing voices saying things like 'I told you so' and he tends to argue with the voices with their replying to him. We'll go up on the Seroquel."

On September 10, 2010, Dr. Abbert completed a Mental Residual Functional Capacity Questionnaire for Fields. He noted numerous symptoms including generalized, persistent anxiety; deeply ingrained, maladaptive patterns of behavior; difficulty thinking or concentrating; persistent disturbances of mood or affect and sleep

disturbance. Dr. Abbert further found Fields was unable to meet competitive standards in the following areas: remember work-like procedures; understand and remember very short and simple instructions; maintain attention for two hour segment, maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; deal with stress of semi-skilled and skilled work; interact appropriately with the general public and maintain socially appropriate behavior.

   2. *Physical Impairments*

Fields also alleges physical impairments including chronic obstructive pulmonary disease ("COPD"), hypertension and right shoulder pain. He testified that he had a heart catheterization after a heart attack approximately two years prior and utilizes breathing treatments four times a day. Medical records reflect a history of coronary artery disease but no current symptoms or recent evidence of disease. Fields received medical treatment for chest pain in 2006 and 2007, culminating in the August 7, 2007, left heart catheterization.

Notes from a consultative exam on April 18, 2009, indicated Fields was experiencing no current heart problems and his hypertension was controlled by medication. The notes further reflected normal breath sounds, good heart function, a normal gait and posture and free range of motion in all extremities except for some slight right shoulder restrictions. A state medical exam on May 6, 2009, found Fields was capable of light exertion work due to complaints of decreased range of motion in his right shoulder. The ALJ noted that this report was not supported by any objective criteria, such as radiological reports.

A June 1, 2009, chest X-ray was negative for any active pulmonary disease. A subsequent radiological report on October 29, 2009, also was negative for any pulmonary disease and a physical exam was negative for any functional limitations. On April 20, 2010, a physical exam at St. Clare Neighborhood Clinic indicated no evidence of chest pain or symptoms of hypertension. Fields reported low back pain, however no X-rays were taken and there is no evidence of follow-up care for back pain.

Fields visited the emergency room of St. Clare Medical Center on May 3, 14 and 19, complaining of a cough and shortness of breath. Fields was diagnosed with bronchitis and prescribed breathing treatments with a nebulizer.

## II.  LEGAL STANDARDS

### A.  Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;
>
> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ=s decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. ALJ'S DECISION

Applying the five-step analysis, the ALJ found at Step One that Fields had not engaged in substantial gainful activity since his alleged onset date of January 1, 2008. At Step Two, the ALJ determined that Fields had the following severe impairments: Chronic Obstructive Pulmonary Disease, Hypertension, Major Depressive Disorder and

Generalized Anxiety Disorder.  At Step Three, the ALJ determined that Fields did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, paying particular attention to sections 3.02 (chronic pulmonary insufficiency), 4.01 (cardiovascular system), 12.04 (affective disorders) and 12.06 (anxiety related disorders).  The ALJ then found Fields had the residual functional capacity to perform:

> Medium work as defined in 20 C.F.R. 404.1567 (c) and 416.967 (c), such as lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently, and sitting, standing, or walking six hours in an eight-hour workday. However, he is to avoid intense smoke, fumes, or dust. Furthermore, due to evidence of severe medically determinable mental impairments in the record, the claimant cannot perform complex tasks (although he can perform some detailed work) and is limited to occasional interaction with others.

[Dkt. 15-2 at 62.]  The ALJ determined at Step Four that Fields was unable to perform any past relevant work as an elevator construction helper, gas welder, dishwasher/kitchen helper, short order cook or roofer helper.  At Step Five, the ALJ concluded that Fields was able to perform a significant number of jobs such as floor waxer/buffer, industrial sweeper/cleaner and housecleaner/day worker.

## IV.   DISCUSSION

Fields claims the ALJ committed various errors that require reversal of the Commissioner's decision.  Specifically, Fields asserts the ALJ erred by:   (1) failing to give controlling weight to Fields' treating physician;   (2) failing to properly assess Fields' RFC;   (3) improperly dismissing Fields' testimony; and (4) failing to adequately

consider whether Fields' impairments met or equaled a listing. The Court will consider each challenge in turn.

### A. Opinion of Treating Physician

Fields first argues that the ALJ erroneously failed to give controlling weight to the opinion of his treating psychiatrist, Dr. Abbert. The Court agrees. A treating doctor's opinion receives controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir.2011); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir.2010). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir.2011); *Campbell,* 627 F.3d at 306. Here, the ALJ gave "little weight" to Dr. Abbert's assessment because it was "not consistent with the various mental status exams referenced above or with the claimant's self-reported activities of daily living." [Dkt. 15-2 at 65-66.] Yet, the ALJ also comments that treatment notes from 2009 and 2010 show Fields "struggling with the same problems" – namely symptoms of depression, anxiety and auditory hallucinations. [Id.]

Even if there had been substantial evidence to support the ALJ's refusal to give substantial weight to Dr. Abbert's assessment, he still would have been required to determine what value the assessment did merit. *See* 20 C.F.R. § 404.1527(d)(2); *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the

9

physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir.2009) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ failed to examine these factors. Although the ALJ notes Fields' testimony that he has had these symptoms since age seventeen, at no point in the opinion does he discuss Fields' longstanding treating relationship with Dr. Abbert. The Court finds that many of the considerations listed above favor crediting Dr. Abbert's assessment: Dr. Abbert is a psychiatrist (not a psychologist), he saw Abbert on a quarterly basis, the most recent treatment relationship lasted for nearly two years and his findings remained relatively consistent throughout the course of treatment. It does not appear that the ALJ considered any of these factors. Based on these shortcomings, the Court concludes the ALJ's consideration of Dr. Abbert's assessment is unsatisfactory and requires remand.

### B. Residual Functional Capacity ("RFC")

Fields next argues that the ALJ ignored evidence of his impairments when determining his RFC. Specifically, Fields asserts the ALJ "cherry-picked" facts to support a finding of non-disabled while disregarding evidence of Fields' mental and physical impairments. When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. 20 C.F.R. § 404.1523; *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009); *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). A failure to fully consider the impact of non-severe impairments requires reversal. *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003).

Fields asserts the ALJ failed to fully consider the impact of his mental impairments on his ability to work. For example, the ALJ emphasized that much of Fields' past work was skilled or semi-skilled and the medical record supports the contention that he possesses the cognitive ability and concentration to complete tasks that are not complex. His analysis, however, did not adequately address Fields' consistent psychiatric treatment in 2009 and 2010 for depression, anxiety and auditory hallucinations. In fact, as discussed above, the ALJ improperly dismissed the opinion of Fields' treating psychiatrist. An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009). A claimant's RFC is the most a claimant can still do despite his or her physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). Here, Fields presented substantial evidence of mental impairments that the ALJ has disregarded without explanation. For example, there is no discussion of Fields' auditory hallucinations or the documented inability to control the hallucinations with medication. On remand, the ALJ should explicitly discuss the restrictions Fields' mental impairments place on his ability to concentrate and understand and the impact of those restrictions on his RFC. [2]

### C. **Credibility of Fields**

Fields notes that the ALJ's decision contained "boilerplate" language concerning his credibility determination that is consistently rejected by the Seventh Circuit: "The

---

[2] The Court's remand does not extend to Fields' alleged physical impairments. The Court finds the ALJ properly considered the evidence relating to physical impairments and a finding of non-disabled is supported by substantial evidence in the record.

claimant's statements concerning the intensity, persistence and limiting effect of those symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment." [Dkt. 25 at 30.] While the use of this language alone does not make a credibility determination invalid, failing to support the determination with explanation and evidence from the record does. *See Punzio v. Astrue,* 630 F.3d 704, 709 (7th Cir. 2011); *Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir. 2010). This is precisely what the ALJ has done here. Fields testified that he has been under consistent psychiatric care since 2009 for depression, anxiety and auditory hallucinations. The testimony is corroborated by mental health records indicating diagnoses of major depressive disorder with psychosis and generalized anxiety. Yet without explanation, the ALJ discredits Fields' testimony as being inconsistent with the residual functional capacity. Because the ALJ did not support his credibility determination with reference to specific record evidence, we cannot assess whether the credibility determination was "patently wrong." *See Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

### D. Listing 12.05 Mental Retardation

Fields contends the ALJ erred by failing to consider or ask a medical expert whether his "impairments met or equaled a listing." [Dkt. 25 at 31-32.] The listings describe impairments that are considered to be presumptively disabling when specific criteria are met. *See* 20 C.F.R. § 404.1525(a). To meet or equal a listed impairment, a claimant must satisfy all of the criteria set forth in the listing. *Martz v. Astrue*, 2008 WL 975051, *7 (N.D.Ind. April 8, 2008). The claimant solely has the burden of proving that his condition meets or equals a listed impairment. *Id.* However, the Seventh Circuit

has provided that even though the burden of proof rests with the claimant, the ALJ must still mention the specific listing that he considers and his failure to do so "if combined with a 'perfunctory analysis,' may require a remand." *Id.* (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 583–84 (7th Cir. 2006)).

The ALJ in this case specifically referenced listings 3.02 (chronic pulmonary insufficiency), 4.01 (cardiovascular system), 12.04 (affective disorders) and 12.06 (anxiety related disorders).  It is not entirely clear which listing Fields claims the ALJ failed to consider, however because he references a diagnosis of Borderline Intellectual Functioning the Court will address listing 12.05 (mental retardation).  Listing 12.05 provides, in part:

> Mental retardation refers to significantly subaverage general intellectual functions with deficits in adaptive functions initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

Fields argues that he was diagnosed twice with Borderline Intellectual Functioning, yet the ALJ erroneously failed to consider the condition or consult a medical expert as to whether the condition met a listing.  Fields noted evidence from the medical records that indicates poor cognitive skills and difficulty with social interaction.  The Court has already found that the ALJ erroneously discredited both the medical evidence provided by Fields' treating psychiatrist, Dr. Abbert, and Fields' testimony.  Without properly considering that evidence, it follows that the ALJ could not properly evaluate Fields' mental impairments and the listing requirements.  Therefore, on

remand the Court directs the Commissioner to consider all relevant evidence when evaluating whether Fields' impairments meet a listing.

## V.  Conclusion

The ALJ's decision is being reversed primarily because he failed to properly evaluate the evidence. It is the job of the ALJ, not the court, to weigh the evidence, resolve conflicts, and determine whether the claimant is disabled.  *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1037 (E.D. Wis. 2004).  Therefore, the Commissioner's decision is **REVERSED** and **REMANDED** with instructions to: (1) consider all relevant evidence, including the opinion of his treating psychiatrist, and thoroughly explain whether Fields medically equals listings 12.04, 12.05 and 12.06; (2) consider all relevant medical evidence when assessing Fields' credibility; and (3) account for Fields' consistent psychiatric treatment when determining his RFC.

SO ORDERED:


Date: 07/26/2013

*[signature]*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana


Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov